May it please the court. My name is Cleveland Stockmire also known as Charles Stockmire for appellant Bruce Eklund. I think below this case was essentially a fact contest as to whether defendant Judge Bonner's bias and malice caused the ethics finding against Mr. Eklund that he was a quote-unquote ticket fixer. Mr. Eklund won that trial and we'd like this court on appeal to uphold that. Well there was no point there was no finding on whether he was a ticket fixer or not. There was no finding by the jury on that that issue. There was in fact a finding that the due process violations caused all of the damages and the due process violation alleged was bias in the hearing. And so the jury could have found that he was innocent of being a ticket fixer. Or they could have found that they that he was a ticket fixer but he didn't get a fair hearing. And if they found that the lack that the due process violation caused him to be unable to get a job I think that they could have found it was because he was not a ticket fixer. And as your honor says there's no separate special verdict finding the fact that he was. The question is whether there should have been. Whether whether in a context like this absent some finding with regard to the truth of the basic underlying allegations since this is a name-clearing hearing only and doesn't have to do with his termination from his job without a finding as to the truthfulness of the allegation how can there be a determination as to whether his name should have been cleared if he if he actually did it his name shouldn't have been cleared and he wasn't harmed. Well I think asking for a special verdict form that would have that question was. Well it's not so much a special that tells the jury that in order to find for the plaintiff you have to find that this did not happen. And in some of the other cases that's exactly what the jury was instructed as I understand it. But in this case your honor they did not ask for that in the jury instructions and they did not object to the jury instruction 16c on due process which asked the jury to find damages caused by the failure to due process. And there are many cases where there are not a separate finding on truth or falsity of the stigmatizing statement. I'd like to get you back to the original hearing. Now what do you think Judge Bonner's role was when he was to hear the charge and hear Mr. Eklund's response? Did he have an obligation to make a finding? Well he had an obligation to be the decision maker and the theory is he could not fulfill that due to bias. Well now wait a minute this is name clearing. Did he have an obligation to say your name was clear? He in fact said your name is not cleared and yes the obverse would be to say. As I understood it and I'm very untutored on name clearing. I understood this was an opportunity for Mr. Eklund to tell his story. And he did have that opportunity. But was there some point in which the presiding officer was supposed to say yes you are clear? Well your honor if you don't have that obligation it's not a real meaningful opportunity to clear your name. Why isn't it? You have a chance to tell your story in public. Because merely telling your side of the story is not what all the case law says is a meaningful name clearing. Is there a statutory provision for this? What are they operating under? We're operating under a line of cases starting with Loudermill the Board of Education which says. Right before Loudermill. And before Roth, Meyer and so on. If the government fires you with stigmatizing findings that are made public that is a liberty interest. So due all due process hearing rights. The hearing has to be one in which you have the chance to be exonerated or not have your welfare. And for example here. For example here there were written official findings that were in his personnel records and that would apparently were communicated to other people. And what the hearing is supposed to do as I understand it is correct those if they're correctable. And the reason why you can correct those and still not give him his job back is because he was an at will employee. So they can have him remain fired even if he didn't do this. But he is entitled to some official correction of the documents that demonstrate that he did it. That's my understanding. Now why don't you. But it would be helpful to have a case which specifically says that. Is there one? Well I think that if you look at all the cases we've cited they are about a real meaningful opportunity to be heard and to decide. But that's not what Judge Noonan is asking you. He's asking you after you've been heard what's supposed to happen. Well hearing requires an impartial decision maker to make the decision. He's not asking you that either. Okay. After you have the impartial decision maker what is this hearing supposed to do. It's my version of what it's supposed to do. Accurate. And if so what case do you have that says that? All of the cases that use the word decision maker he's supposed to decide if it's true. Not just receive information and let the employee publicize his version. The whole point of due process is that the decision making process has to be fair. So in every hearing that due process requires they cannot pre-decide it. So all of the cases about due process or what's in it, to answer your other point, the liberty interest is in not being fired with the stigma. Here the jury could have found he was wrong, the bias, the due process was a violation of due process causing the stigma, the negative ethical findings which caused the damages. So on these jury instructions the jury verdict must be sustained. I guess the, we get right back to our original exchange I guess, he makes a decision which is that he was improperly lowering his ticket liability and your complaint of that is that was, that decision was the result of an unfair hearing. And the jury could agree with you without reaching the truth or falsity of the decision. They could just say you didn't get a proper hearing and so the resolution is left up in the air, the stigma is still there, you're hurt and we'll give you damages. But that doesn't necessarily answer the question of whether the jury agreed or disagreed with the result of the decision. Well, Your Honor, I would submit that it actually does because the causation requirement in 16-5 is that the failure to provide adequate process has to cause the damages. Now, if the failure to provide adequate process ended up with the correct, that the stigma was correct, it would not cause the damages. Okay? It's only if the stigma is incorrect that it causes the damages of having that stigma. Otherwise it's no harm, no foul. I'd like to explore the question of bias on Judge Bonner's part. Now, in what sense was he biased? In what way was he biased? He had a personal stake in rejecting Why was it a personal stake? It was an indication in what Eklund said that the judge was doing the right thing. How did that make it personal for Judge Bonner? As presiding judge, he was in charge of the magistrates who handled the traffic fines. As presiding judge, he heard Mr. Eklund tell him, these magistrates are commonly violating state law. The fact of the... Now, when did Eklund tell him that? 2003. 2003. And what date? 2004. What date? From his first reports in June 2003. Then there followed orders to keep this internal, orders, Eklund says, to destroy documents and lies. But none of those are coming from Judge Bonner, right? Yes, they are. By 2004, they're coming directly from Judge Bonner. Well, I think you ought to keep your dates straight. When does Judge Bonner participate in anything? Well, he participates directly in early 2004 and indirectly because you can infer the other orders are related to him because we have documents like, he doesn't want Department of Finance to poke around, referring to Judge Bonner. So it's his personal stake in running a court engaged in illegal operations. That is bad for his reputation. And he did not contest that the state traffic law violations were breaking the law there. The defendants did not really contest these orders to cover this up. So when Eklund says the investigation into him is in retaliation for his protesting this cover-up, he's denying that he did anything wrong and he did deny it expressly in his July 12th letter. And he's saying it's in retaliation. That's July 12th of what year? 2004. Four, yeah. When he asked to I have a sort of somewhat global question, which is, are you, this hearing, the only hearing at which Judge Bonner presided was before the termination became final, right? It was pre-termination, yes. Right. And was that, are you complaining about that as a pre-term, I don't know what you do with a name-calling hearing. Is there such a thing as a pre- termination name-calling hearing and a post-termination name-calling hearing? Was there only one hearing? Should there have been another hearing? What if there were another hearing? What about the Bennett investigation? Was that another hearing? How did the two pieces fit together? Okay. So this was a pre-termination hearing. He's terminated with these findings. They're widely publicized, causing harm. There is a post- termination process with an investigator from the mayor's office, Ms. Bennett. However, she testified she did not consider Eklund's allegations that this was retaliation, and she focused, she did not give a generic review of his firing at all. She had one narrow focus. Well, but the actual report, and this is the problem, the report was not admitted. And the report, it seems to me, having looked at it now, was focused really on the issue as to which the name-clearing hearing was pertinent and did make a finding, i.e., that he did fix the tickets. And her testimony, it's true, was somewhat less clear than that. But not admitting the report seems to me to be a real problem, not for the truth of what it says, but for the fact that it said it, in terms of whether he in fact had a post-termination process. But the scope of her process is the distinction, Your Honor. She said she only measured whether he fit within the whistleblower ordinance at the city council. I know, but I'm saying when you actually look at the report, that's not really accurate. Well, okay. But the judge kept out the report because you asked him to. But, Your Honor, this is like only hearing one side of the story and not hearing the defense. You know, it's unfair in any hearing, in any trial, to only hear the claim but not the defense. Well, it was an affirmative defense. I don't understand what you mean by that. I'm sorry. Okay. Let me explain. It was an affirmative defense that not only did he not do it, but this was all retaliation for the cover-up, protesting cover-up orders. And she excluded consideration of that affirmative defense. So she did not hear him, and her procedure was inadequate. She excluded considering it because she said he has to report outside to Seattle Ethics before the adverse job action. So she said he didn't, and, in fact, he didn't. Should we? So she did not consider the rest of his claim that it was all retaliation. Yeah. If there were defects in that process, did they have to be contested by an appeal as part of the state equivalent of an Administrative Procedure Act? No. You had a prior correct ruling by the trial court that there was no requirement of exhaustion of remedies. No. But this is – in the context that I was asking this question, i.e., was there a post-termination process as well as the pre-termination process, I don't see how your response is responsive, because what you're really saying is the post-termination process was no good. Well, you can deal with that, but that's not responsive to the question of whether there was one. And it certainly appears that there was one. Yes. There was one. And we briefed this quite a lot, Your Honor. There was one, but it had to be adequate, and it was not adequate because she did not consider Mr. Eklund's claims that this was all retaliation. So then why are you worrying about the pre-termination process when there was a post-termination – or let's look at it another way, because this comes up in the jury instruction question, and I find it very confusing. If there was a post-termination process, and it appears to me that there was, then the question arises, which there's contradictory case law about, do you need a pre-termination process with regard to name-clearing as opposed to termination? And if you do, how do the damages run? How does liability run? In other words, the case was all set up as if there was only one process, and in fact there were two, it seems to me. Well, in fact, Your Honor, we had extensive testimony on the post-termination process. Ms. Bennett was on the stand, as you noted. The jury considered as an issue of fact whether the process was adequate, and the defendants did not object to submitting that to the jury as an issue of fact, whether the post-termination was adequate, pre-termination and all the rest. But that's helpful, at least, to understand. So your understanding is there was a post-termination process, and they were essentially both on trial, that ultimately your question – ultimately what went to the jury was, was there either a pre- or a post-termination adequate due process? Right. And the instructions went into both of them and said all the opportunities considered as a whole, you have to judge whether they're adequate. So the first one was not adequate because of bias. The second one, because it excluded consideration of this affirmative defense, in essence. Just like Judge Bonner said, he did not consider Mr. Eklund's claims that this was retaliation himself. Mr. Farrar, your time is well over, but I have one more question. As I understand qualified immunity, it's a pretty difficult barrier for you to surmount. And he has qualified immunity if he acted reasonably in thinking that he was not disqualified. And why wasn't the conclusion he reached a reasonable conclusion? Because he was adjudicating, if that's what meant, the parking violations. He wasn't getting into retaliation. But he – we submit, Your Honor, that he had to, to hear the claim of retaliation. Mr. Eklund did not get a hearing if no one heard his claim it was retaliation. Now, the qualified immunity, it was – is about could he reasonably think that he could hear this matter harboring a bias? Now, you'll have to clarify, did Eklund challenge his sitting as a judge? Yes. On the July 12th letter, he asked him to recuse. He said he had two conflicting roles. And he did not recuse. If the Bennett process had been adequate, would that have cured the problem? It would have cured some of it, perhaps. But it was not adequate because she restricted the scope and did not – I know that. I'm asking. Okay. The question – yeah. We're running over time, so just answer. In each case, I think it's up to the jury to look at it. In this case, we would argue even that would not be adequate because the damage was done. They put him in with real ticket fixers. It was all over the paper. Everybody shunned him. But that's why this is a name-clearing hearing. And presumably, if Bennett had done it right, she would have issued – in your view, she would have issued a report saying, no, that he wasn't a ticket clear at all and that there should be announcement to that effect and that it should be put in all of his records that he was not, in fact, a ticket clear. And what this is all leading back to is why – it sounds like the real problem was the Bennett proceeding, not the Bonner proceeding. Well, both are a problem. And hers was a problem because her scope, her jurisdiction was limited by the municipal ordinances she was operating under. It was not a generic name-clearing process where Mr. Eklund's claim would be heard. Okay, Mr. Tegeler, our questions have kept you engaged well over time. So I think we should hear from the other side now. Thank you. Good morning. May it please the Court, I'm Amy Lohan on behalf of the appellees and cross-appellants in this case. Judge Bonner and the City of Seattle gave Bruce Eklund substantial process in this matter, both before and after his termination. No case has ever found a public employee's due process rights violated where this much process was provided. Well, the claim is that the first decision-maker was biased and the second one was hamstrung. So – The second one was very – Hamstrung by the limitations of her role. Yes. But this circuit has clearly held in the Walker case, which was Judge Canby's case, that a post-termination impartial decision-maker is sufficient even if the pre-termination decision-maker is not impartial. And here, Ms. Bonner testified clearly, and the evidence in the whistleblowing report itself, was that she considered every part of Mr. Eklund's defense. Well, the whistleblowing report was not in there. That's right. That may be a separate problem, but it's not in the record. That's right. But for purposes of qualified immunity, this issue is involved under each of the juries. And for purposes of qualified immunity, this Court has to consider whether it was sufficiently established that there was a post-termination process that cured any potential pre-termination process. And again, here, what's not required is consideration of the actual decision itself. What's required is a chance to clear your name, a chance to respond. Where are you getting that from? I mean, that seems like a strange role. And, I mean, he can go to the newspaper and do the same thing. What does he need a hearing for? Well, that comes straight from the Roth decision. The hearing is essentially your liberty interest, is where it derived from, to clear his name by talking. It's for somebody to make a determination as to whether he actually did this. And then, because there are official consequences to the stigma, i.e., employment records and so on. It's not just for him to talk. Well, it's basically to preclude the government from setting out that Eklund can't pursue his employment opportunities in the future. So a decision has to be made as to whether it's true or false by the decision maker, not just to have Eklund talk, right? Well, not really, actually. I mean, that's what Roth says, is you don't actually have to have a review of the actual decision in order to have a proper name. Roth didn't say that. It says you don't have to have a review of determination, but you have to have a review of whatever it is that's stigmatizing. Right. That's right. That's right. It's not a review of the decision. It's a review of the possibility of stigma in the future. But it's a review with a decision. It's not just talking. That's right. That's right. And I understand that. And that's why the other case, the other cases that are relevant here is the cases that say you can't simply bring in an impartial decision maker to overhear, oversee the hearing. Mr. Eklund's counsel has said they should have just gone to a pro tem and had a pro tem hear this case. And that's not allowed because someone does have to make the decision and that's the person who's stigmatizing. Well, why couldn't a pro tem person do it? The First Circuit, Fourth Circuit, Fifth Circuit, Sixth Circuit has expressly answered that question and said you can't. You cannot have a neutral come in and oversee it because it has to be the agency that's stigmatizing that oversees the hearing. As a practical matter, why they can't? I don't know the answer to that question. But as a legal matter, if the court had simply set up that. Well, our court has not set up that. No. The Ninth Circuit hasn't expressly held that. I find it rather mystifying that you have a simple way to do it. Why wasn't it done? Well, the case law would say you can't. Excuse me a second. Judge Berzin, your microphone is picking up every time the page turns, if you may want to move it a little farther away from that. The case law that we do have, which isn't the Ninth Circuit, the Ninth Circuit hasn't expressly ruled on this issue of whether an outside decision maker could come in. Of course, the issue for Paul. It would just be the deputy. I'm sorry? Outside, you just have the deputy. Well, actually, if you assume that Bonner is biased simply because Eklund accused the court of wrongdoing, then the deputy would be biased under those facts as well. Well, somewhat less. The deputy has not been in charge. But the question is whether or not simply accusing Bonner of wrongdoing is enough to impugn him so that he has to step aside. And that question was answered very quickly. Go back to what I was saying previously. I mean, I think a lot of this is cleared up. If you think about the question of whether we're talking about one hearing or two, I don't even know if he needed the first hearing. And the first hearing, all the case law that you're talking about, I think, is not in the name-clearing context necessarily. And it is in the context of a pre-termination hearing. And the notion there is that that is just a chance to have the decision maker hear your side of the story. But the assumption is that there's a later actual formal hearing. And would you agree that that is necessary here or should have been done here? It's not necessary if you look at – it could be enough to cure. You have to look at the circumstances. But it's not necessary if he's given every opportunity to clear his name, which in this case – Well, if he has – so you're saying that he can have no hearing before an impartial decision maker. You could – the only operative hearing could be before a partial person. Well, what I'm saying is that the – well, first of all, the level of what makes someone impartial is higher. That's a different question, but I'm asking you conceptually, right? Conceptually, what you look at is whether he had full and ample opportunity. Whether it's before or after termination. Okay. Do you have a full and fair opportunity if the only hearing you ever get is before an interested person? An interested person in the sense – A person who was involved in the decision making process. Let's leave off the question of whether he had ulterior motives as well. I think the answer to that is likely that that wouldn't be sufficient. I think that no court has actually held that in a name-clearing case, which is part of why qualified immunity is required. No case has been pointed to in which someone had such a pecuniary interest, personal interest, in a name-clearing case that a court found that fact standing alone was sufficient. Is there any area of due process in which it's okay to have the final decision made by an interested person? A non-neutral person? Is there any due process line of cases in any area that allows that? I don't know. I don't know the answer. I think the answer is no. I think that could be the answer, but I think what we're required to do in the qualified immunity context under Anderson is look specifically at the name-clearing context. You can't just rely on generalities or notions of bias or notions of overall fairness. You have to look at specific allegations. I don't think you can borrow from the property context cases and bring it into the name-clearing cases in a qualified immunity determination. If this Court decides that no imp – that a partial decision-maker cannot preside over a name-clearing hearing and have that be an adequate hearing, it's the first case to do so. But you agree that this is adjudicatory in some sense, and you have agreed to that. Then isn't the notion of having an interested person just completely contrary in a way that you don't need a specific case to say it to the notion of what is due process, which is to have somebody make a decision who's looking at it neutrally? I think that that's what the Supreme Court answered in the Hortonville case. And when they said, you have to look at the overall reasonableness of the party's actions, not simply whether or not they have reason to be partial. So in the Hortonville case, the school board had received substantial criticism, just like Eklund saying Bonner did, substantial criticism that their behavior was inappropriate. And Hortonville said, simply criticizing isn't enough. You have to look at the reasonableness of the board's actions, and you have to determine whether or not they were so biased that we overcome the general presumption of honesty and integrity in our decision-makers. The case factually is extremely similar to the Hortonville case, and it's also similar to the Bonnelli case. Well, you would put the, I assume, the qualified immunity question as whether an objective person in Judge Bonner's position would know that he ought not to hear this case because it alleged wrongdoing in his department. That's right. I mean, there were two pieces of fact in front of Judge Bonner when he made the decision, and those are the only two pieces that this Court should consider to determine whether he was reasonable in going forward. And those are the letter from Eklund's lawyer that said, please step aside. And that is a really specific request. He says, you need to step aside because you're being both the investigator and the adjudicator, and that's unfair. So was Bonner required to step aside when he got that piece of information? And that was squarely answered in the Winthrow case. The Supreme Court case said, you can act as both, that's fine. Wait. You can act as both, my understanding is, for one of these pre-termination hearings. But that's why it matters so much whether this is the only hearing or whether there is another one. And if you're looking at it just as this is just the first stage, I don't think Bonner has any problem. But if there was never another hearing, then there's a problem. Right. I agree. But even if you say the, even if you accept Bonner's theory, I'm sorry, Mr. Eklund's theory, and reject the post-termination process, even looking at the pre-termination process alone, in the, in the, once these allegations have come forward saying, please step aside, you're not impartial, he was still reasonable to go forward. Even if you find. He was reasonable to go forward for what, what he thought he was doing, if what he thought he was doing was going to have a second stage later. Right. So maybe he's reasonable, but then there's another problem, which is there really was never a second stage later. At least that's the allegation. That's the allegation. And, and that's what, and I'd like to turn back to what Judge Bonner had in front of him at the time, and then we'll talk about the post-termination process in a moment, if that's all right. The, the only other allegation that was in front of Judge Bonner is, is Mr. Eklund's letter on July 12th and what she said. I think that I'm, I am a victim of retaliation here. And that's why the ticket-fixing investigation was found. He's basically saying to the decision-maker, it's certainly reasonable for Judge Bonner to say, he wants me to consider this. This is his primary defense. It's still his only defense, really, to the ticket-fixing allegation. Now, he does not accuse Bonner of retaliating, does he, in that letter? No, not at all. He says. So, but the first request is, you and, are the investigator and the judge and you shouldn't be both? Right. And, and you say, was that a, I couldn't get you a comment on that. There's a Supreme Court case, directly on point, and it's the Winthrop case, the Winthrop case, which says, you don't have to step aside simply because you're the investigator and the adjudicator. And this circuit adopted that as well. It didn't say, it didn't say, you have to step aside because improprieties within your department are being alleged and, and that gives you a conflict. That was never said. But the case that you're relying on, and I'm not sure I know what it is, but I'm assuming that it, again, that it was talking about this, this short opportunity to be heard before there's an actual decision made, not the final decision. Is that right? Well, it has to be. No, actually, that's not right. Because there was one case, and I believe it was the, I'll have to turn to it, but I believe it was the Walker case, in which that's not the right case. There's a nine circuit case that's cited in our briefs, and it says, actually, somebody was able to come forward and be a witness against the individual, and still present a version in clearing hearing. Simply having knowledge or information about the case does not render you unable to hear the case. And that's also in the Vannelli case as well. The case had come before a board, pre-termination, and the question was, post-termination, are they able to hear the same case? And the answer to that was, yes. And in that case, one of the board members' sons dated one of the accused, the people who accused the teacher of wrongdoing. There was a really direct personal relationship there, and this circuit held, that's not enough to overcome our assumption that our decision-makers are impartial. So, you know, in looking at, actually, all the, all the process that was given here, the real question under Matthews is, was there a risk of erroneous deprivation? And you have to revert back to that and determine whether there would be a probative value of additional process. Would anything more have permitted Eklund to not be deprived of his liberty rights or his right to be free of stigma? And this investigation was vetted over and over again. The Court's entire executive leadership team reviewed the investigation report and recommended termination. The Judicial Executive Committee vetted the investigation report. I'm looking at the Vannelli case and what it says to me is that the April 7th post-termination hearing met the standards of fairness required by the due process hearing because the board members did not have any personal or financial stake in the action, nor was any personal animosity alleged. So I don't understand how you can say that that approved a circumstance in which they did have a personal stake. Well, one of the board members in that case, that was a teacher accused of wrongdoing. He was accused of sexually inappropriate behavior towards female students. And one of the board members in that case had a son who dated one of the accusers. There was a direct personal relationship in that case that the circuit said wasn't sufficient. Well, but he's saying, so they're finding as a matter of fact that he wasn't disqualified on the ground of bias, but they're not finding that it's okay to have a biased decision-maker. That's right. You're saying, but that's what you were saying. You were saying that there is no requirement to have an unbiased decision-maker. Maybe it's more fair to say there's never been a case that says that statement on its own has been sufficient to render due process invalid. I'm sorry. I didn't hear that. You have to look at the totality of the circumstances and that's what they do in Vannelli. They don't simply look to whether a decision-maker is biased. They look to everything, all the opportunities someone was given. But certainly its premise is the premise that I was asking you about, which is you need to have at some point an unbiased decision-maker. I don't disagree with that premise. Ms. Lawrence, you know, it's puzzling as you look at this as to why the jury gave this verdict and these damages. How would you account for the psychology of the jury? I don't know that I'm qualified to comment on the psychology of this jury. You must have had some... Well, what's the necessary implication in your view? The necessary implication is that the sort of never passed the qualified immunity stage or reached a jury. That's why we don't allow cases to go forward to juries is because they at times require higher... Was the only defendant at this point Mr. Bonner? No, this case was brought against four... I know it was brought against but in the end... No, it went to the jury against all individual defendants on the 1983 claim. The wrongful termination went forward only against... Right, but they all wanted a wrongful termination so it was the final judgment only against Mr. Bonner. Yes, and only on the 1983 claim. Is it fair to say they really didn't believe him or didn't like him? I wouldn't... I don't know. I guess so, right? I mean, they must have believed that Bonner wronged Eklund in some way. That's right. The question for this court is whether it should have ever reached a jury. Well, that's right. This is not a legal question but sort of a psychological one. Yeah, well, I don't have an answer to that. Well, our questions have taken you over time so I guess... Thank you. Mr. Stockmyer, your time is over but if you want to take a minute or two... This was properly submitted to the jury and the jury instructions described at length what is adequate due process and this was an issue of fact decided by the jury. We think there was quite substantial evidence to support that showing bias because Judge Bonner said Mr. Eklund is a threat of disclosure and what he was threatening to disclose was that Bonner presided over a court that violated the state law frequently. But isn't whether or not that matters depending on what it was that Bonner was doing and if what Bonner was doing was simply making a preliminary decision and there was going to be a full name clearing hearing later then there's probably no problem with him having done what he did and he doesn't seem to have been in control over what was going to happen later. I believe that the due process requirement and in Vannelli and other cases applies to both hearings, Your Honor. Both hearings can cause harm. Vannelli was a victim of damages from the initial flawed hearing so due process applies to both hearings. Here the jury made its finding there was no due process in both hearings and this caused the damage and we would like that jury determination after a very long trial where they looked at Judge Bonner, they heard him say he fired him on a hunch they heard him say a lot of things we would like that to be upheld. Okay. Thank you. I think we have your arguments in mind and the ones you were unable to assert we'll take on the briefs. The case just argued is already submitted for decision.
judges: Canby, Noonan, Berzon